IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**TONYA SCOTT**                                                                                            **PLAINTIFF**

**V.**                                                      **CIVIL ACTION NO. 2:10-CV-220-KS-MTP**

**HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY**                                                                      **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court **grants** the Motion for Summary Judgment [62] filed by Defendant Hartford Life and Accident Insurance Company.

### I. BACKGROUND

This is an ERISA dispute over the denial of long-term disability benefits. Plaintiff was an employee of the Hattiesburg Clinic from March 10, 2007, through June 6, 2007. Hattiesburg Clinic's group benefit long-term disability plan was insured through a policy issued by Defendant Hartford Life and Accident Insurance Company.

Plaintiff was injured at work on or around April 20, 2007.[1] She slipped on some blood and urine on the floor, fell, and landed on her buttocks. She continued to work,

---

[1] There is some confusion in the administrative record as to the date of Plaintiff's injury. It is undisputed, however, that the injury occurred at some point between April 20, 2007, and April 22, 2007.
  Plaintiff and her husband submitted affidavits [67-6, 67-7] in support of their response to Defendant's motion for summary judgment. The Court may not consider these affidavits when reviewing the administrator's determination of benefits. *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 263 (5th Cir. 2011) (generally, the court may not consider evidence that was not part of the administrative record). However, the Court may relate facts provided in Plaintiff's affidavits as it explains the background of the case.

despite experiencing lower back pain. On April 23, 2007, she injured her thumb when a patient crushed it with a piece of furniture. She saw a doctor for both injuries on April 24, 2007, and her first day off from work was April 26, 2007.

Over the next few years, Plaintiff continued to seek medical care for her back injury. She apparently pursued and received worker's compensation payments for the injury.[2] Plaintiff claims that she attempted to file a claim with Defendant but received no response. Therefore, on April 14, 2010, Plaintiff filed a Complaint [1-2] in the Circuit Court of Forrest County, Mississippi, seeking benefits under the policy and a variety of other damages. Defendant removed the case to this Court on September 3, 2010 [1], on the grounds that Plaintiff's claims were preempted by ERISA. Plaintiff eventually filed an Amended Complaint [15] which asserted a claim for benefits under ERISA.

On June 27, 2011, Defendant filed a motion for summary judgment [27], arguing that Plaintiff had failed to exhaust her administrative remedies. Specifically, Defendant argued that Plaintiff did not file a claim for disability benefits until June 18, 2010 – after she had initiated the present litigation. On July 18, 2011, Plaintiff filed a Motion to Show Cause [31], requesting that the Court order Defendant to show cause as to why they could not approve or deny Plaintiff's claim for benefits. In response [33], Defendant asserted that it had no record of Plaintiff filing a claim for benefits until June 18, 2011 – after this litigation had begun.

---

[2]The administrative record does not contain a copy of the Worker's Compensation Commission's decision.

While these motions were pending, Defendant filed a motion to stay [38] the case while it evaluated Plaintiff's June 2011 claim for benefits through the normal administrative process. The Court granted the motion and stayed the case [39] so that Defendant could evaluate the claim. On November 21, 2011, the Court lifted the stay [40] after receiving notice that Defendant had denied Plaintiff's claim, and it set a briefing schedule for the parties to supplement their dispositive motions.

After the parties had begun filing supplemental briefs, Plaintiff filed a motion to stay [52] the case while she pursued an administrative appeal of Defendant's benefits determination. After a teleconference with counsel, the Court granted [55] the motion, stayed the case, and found that the pending dispositive motions were moot.

On April 27, 2012, the Court received notice that Defendant had denied Plaintiff's appeal, completing the administrative review process. Defendant then filed the administrative record [60]. The Court lifted the stay [61] and set a motions deadline. Defendant filed its motion for summary judgment [62], which the Court now considers.

## II. DISCUSSION

When an ERISA plan gives the plan administrator discretionary authority to construe the plan's terms and determine eligibility for benefits, the Court reviews the administrator's decision for mere abuse of discretion. *Schexnayder v. Hartford Life & Acc. Ins. Co.*, 600 F.3d 465, 468 (5th Cir. 2010). It is undisputed that the policy gives Hartford "sole discretionary authority . . . to determine . . . eligibility for benefits and to interpret the terms and provisions of the plan and any policy issued in connection

with it." Accordingly, the Court may reverse Defendant's denial of benefits only if it abused its discretion. *Holland v. Int'l Paper Co. Retirement Plan*, 576 F.3d 240, 246 (5th Cir. 2009). When interpreting an ERISA plan, the Court gives "its language the ordinary and generally accepted meaning." *Koehler v. Aetna Health Inc.*, 683 F.3d 182, 2012 U.S. App. LEXIS 11190, at *10 (5th Cir. 2012).

"A plan administrator abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial." *Holland*, 576 F.3d at 246 (punctuation omitted). The Court will only find an abuse of discretion "where the plan administrator acted arbitrarily or capriciously." *Id.* (punctuation omitted). "A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Id.* The Court's review of the administrator's decision "need not be particularly complex or technical;" the Court must only ensure that the decision falls "somewhere on a continuum of reasonableness – even if on the low end." *Id.* at 247. The Court "owes no deference, however, to an administrator's unsupported suspicions." *Anderson v. Cytec Indus.*, 619 F.3d 505, 512 (5th Cir. 2010).

### A.   *Hartford's Decision*

Under the terms of the policy, Defendant has "sole discretionary authority . . . to determine [Plaintiff's] eligibility for benefits and to interpret the terms and provisions of the plan and any policy issued in connection with it." The policy provides that it "does not cover any loss caused by, contributed to, or resulting from . . . a Pre-existing Condition." According to the policy, "[p]re-existing Condition means a

condition for which medical treatment or advice was rendered, prescribed or recommended within 3 months prior to [Plaintiff's] effective date of insurance."

The policy requires that Plaintiff provide written proof of loss to support her claim. It also provides:

> The following items, supplied at Your expense, must be a part of Your proof of loss. Failure to do so may delay, suspend or terminate Your benefits.
>
> 1) The date Your Disability began;
>
> 2) The cause of Your Disability;
>
> 3) The prognosis of Your Disability;
>
> 4) Proof that You are receiving Appropriate and Regular Care for Your condition from a Doctor, who is someone other than You or a member of Your immediate family, whose specialty or expertise is the most appropriate for Your disabling condition(s) according to Generally Accepted Medical Practice.
>
> 5) Objective medical findings which support Your Disability. Objective medical findings include but are not limited to tests, procedures, or clinical examinations standardly accepted in the practice of medicine, for Your disabling condition(s).
>
> 6) The extent of Your Disability, including restrictions and limitations which are preventing You from performing Your Regular Occupation.
>
> 7) Appropriate documentation of Your Monthly Earnings. If applicable, regular monthly documentation of Your Disability Earnings.
>
> 8) If You were contributing to the premium cost, Your Employer must supply proof of Your appropriate payroll deductions.

9) The name and address of any Hospital or Health Care Facility where You have been treated for Your Disability.

10) If applicable, proof of incurred costs covered under other benefits included in the Policy.

The policy also provides that Defendant may request proof of Plaintiff's continuing disability over time, and as to whether she is receiving appropriate and regular care from a doctor. Failure to submit such information may delay, suspend, or terminate benefits. Finally, the policy provides that Defendant will make a benefit determination within a certain period of time, but that it may extend that time period for matters beyond its control, such as Plaintiff's failure to provide necessary information. In the event such an extension is necessary, Plaintiff is required to provide the necessary information within forty-five days of Defendant's request.

During the course of Defendant's investigation of the claim, Plaintiff produced medical records which prompted Defendant to inquire whether her disability may have been "caused by, contributed to, or resulting from" a pre-existing condition. For example, Plaintiff was examined by Dr. Kelly Bernardo. *See* pp. 389-392 of the Administrative Record [60]. Dr. Bernardo felt "very strongly that [Plaintiff's] pain related complaints for the back and lower extremities [are] entirely related to her fall of April 20, 2007," but she also believed that Plaintiff's symptoms "represent congenital problems as opposed to something that developed at the time of the fall." Also, Dr. Michael Patterson observed that Plaintiff had "a pre-existing spondylolysis, but it was not symptomatic. *Id.* at 404. Therefore, she falls in the category of someone who has a pre-existing condition, which was made symptomatic by a fall at work." Dr. Patterson

expressed the same opinion on another occasion. *Id.* at 417.

In light of the medical records indicating that Plaintiff's disability was related to a pre-existing condition, Defendant requested further information in letters dated July 20, 2011; August 5, 2011; September 1, 2011; September 12, 2011; September 29, 2011; and October 10, 2011. *Id.* at pp. 77, 79, 82, 84, 87, 92. Additionally, Defendant's initial letter acknowledging Plaintiff's claim outlined a variety of materials that Defendant required in order to evaluate the claim. *Id.* at 97-98.

In its denial letter of November 4, 2011, Defendant listed the following items that it had specifically requested on multiple occasions but that Plaintiff had failed to provide:

- A complete Work and Education History Form

- A complete Medical History Form listing all hospitals, physicians, pharmacies and other providers of medical care from 12/8/2006 to the present

- Medical records from all providers of care and treatment listed on the Medical History from 12/8/2006 to present

- Medical records from Dr. Gillespie from the initial office visit to present, as [Plaintiff] indicated that she began treating with her recently

- Prescription history from 12/8/2006 to present

- A copy of the benefit payment history . . . from the Workers' Compensation carrier

- Copies of your 2008, 2009 and 2010 Federal Tax returns, including any W2 and 1099 statements

- A statement which indicates the chronology of your filing for LTD claim, and explains the delay in filing

*Id.* at pp. 71-75. Therefore, Defendant denied Plaintiff's claim on the basis that her failure to provide requested documentation hindered its ability to determine whether she was entitled to benefits. However, Defendant noted that Plaintiff could provide the necessary information or appeal of the decision without doing so.

Defendant denied Plaintiff's appeal for substantially the same reasons. In a letter dated April 17, 2012, Defendant's appeal specialist noted that Plaintiff had "not provided a completed Medical History Form noting all providers she treated with during the 3 month period prior to the coverage effective date (and going forward)," or "medical records for the applicable 3 month period (December 10, 2006 through March 9, 2007) nor any explanation as to if she saw any medical providers during this time period." *Id.* at pp. 722-26.

In summary, Defendants received medical records from Plaintiff indicating that her back problem was the result of a condition predating her slip-and-fall. The policy excludes coverage for disability caused by, contributed to, or resulting from a pre-existing condition. The policy defines a pre-existing condition as one for which Plaintiff received medical treatment or advice during the three months prior to the policy's effective date. On multiple occasions, Defendant requested further information from which it could determine whether Plaintiff received such medical treatment or advice, but Plaintiff failed to provide the requested documentation. Therefore, Defendant denied her claim.

Plaintiff argues that the evidence she submitted to Defendant shows that she

is disabled, that she does not have a pre-existing condition, that her injury was work-related, and that no reasonable person would have demanded further information. Whether Plaintiff is disabled is irrelevant to the Court's analysis, as Defendant's decision was based upon Plaintiff's failure to provide information regarding the alleged pre-existing condition. Plaintiff may be disabled, but if her disability was caused by, contributed to, or resulted from a pre-existing condition, the policy provides no coverage. The pertinent issue, therefore, is whether Defendant's decisions to request further information and to deny coverage for Plaintiff's failure to provide it were "made without a rational connection" to the known facts. *Holland*, 576 F.3d at 247.

In the Court's opinion, the Administrative Record contains evidence supporting Defendant's denial. Dr. Michael Patterson believed that Plaintiff had a pre-existing condition that was asymptomatic prior to her slip-and-fall, and Dr. Kelly Bernardo stated that Plaintiff's back problem was congenital and merely manifested itself at the time of the accident. In light of this evidence, it was reasonable for Defendant to seek further information from Plaintiff as to whether she had received medical treatment during the three months prior to the policy's effective date. Defendant provided Plaintiff with a Medical History Form, but Plaintiff failed to complete and return it to Defendant. Plaintiff also failed to provide any written explanation as to whether she had seen any medical providers during the three months prior to the policy's effective date. Accordingly, Defendant did not abuse its discretion by denying Plaintiff's claim for benefits. *See Anderson*, 619 F.3d at 514 (administrator did not abuse its discretion by seeking additional information verifying claimant's alleged condition); *Menchaca v.*

9

*CNA Group Life Assur. Co.*, 331 F. App'x 298, 303 (5th Cir. 2009) (claimant's refusal to provide earnings information and medical updates provided plan administrator with sufficient reason to deny benefits).[3]

### B. *Hartford's Conflict of Interests*

Plaintiff argues that Defendant has a conflict of interests insofar as it was responsible for both paying benefits and determining her eligibility for benefits. The Court weighs an administrator's structural conflict of interests "as a factor in determining whether there is an abuse of discretion in the benefits denial . . . ." *Holland*, 576 F.3d at 247 (citing *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S. Ct. 2343, 171 L. Ed. 2d 299 (2008)). A structural conflict of interests is "but one factor among many that a reviewing judge must take into account." *Id.* at 248. The emphasis which the Court places on the conflict will depend on the particular circumstances of the case. *Glenn*, 554 U.S. at 117, 128 S. Ct. 2343. The burden is on the claimant to produce evidence that the administrator's conflict of interests "influenced its benefits decision." *Anderson*, 619 F.3d at 512; *Holland*, 576 F.3d at 249. If a claimant fails to "present evidence of the degree of conflict, the court will generally find

---

[3]Plaintiff argues that Defendant was in a better position to obtain the information it requested. Indeed, the policy provides that Plaintiff must provide authorization for Defendant to obtain confidential medical, financial, and other information reasonably necessary to support the claim. However, the policy does not require Defendant to seek out such information. *See Gooden v. Provident Life & Accident Ins. Co.*, 250 F.3d 329, 333 (5th Cir. 2001) *(*administrator has no obligation to investigate a claim); *McDonald v. Hartford Life Group Ins. Co.*, 361 F. App'x 599, 610 (5th Cir. 2010) (where policy placed burden on claimant to provide proof of loss, insurer had no obligation to obtain or assist claimant in obtaining such proof).

that any conflict is not a significant factor." *McDonald*, 361 F. App'x at 608 (punctuation omitted). Furthermore, "where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." *Glenn*, 554 U.S. at 117, 128 S. Ct. 2343.

In the present case, Plaintiff produced no evidence that Defendant's structural conflict of interests influenced its benefits decision. However, the administrative record contains evidence that the appeal of Defendant's initial benefits determination was addressed by a separate department within Defendant, and by different claim examiners. Therefore, the Court finds that Defendant's structural conflict of interests was not a significant factor in its benefits determination.

## C.     *Delay*

Plaintiff's injury occurred in April 2007. Plaintiff alleges that she attempted to file a claim immediately after the injury, while Defendant alleges that it did not receive notice of a claim until the summer of 2011. Accordingly, Plaintiff argues that Defendant delayed considering her claim, and she argues that the delay is evidence that Defendant's decision to deny benefits was arbitrary and capricious.

Plaintiff suggested in briefing that she either forwarded prior notices of the claim to the wrong entity or that her employer prevented Hartford from receiving her prior notices of claim out of some animosity toward Plaintiff. According to the administrative record, Plaintiff advised Defendant during the claim process that she

had attempted to file a claim through her employer, Hattiesburg Clinic. However, when contacted by Defendant, Hattiesburg Clinic denied having been contacted by Plaintiff about a disability benefits claim. *See* pp. 636-38 of the Administrative Record [60].

The Court will not resolve this factual dispute. It is irrelevant to the Court's evaluation of Defendant's decision, as Defendant did not base its denial on the delay in its receipt of Plaintiff's notice of claim. While Defendant undoubtedly had concerns regarding the passage of time between the injury and its receipt of notice, it ultimately denied coverage for Plaintiff's failure to provide sufficient information regarding a suspected pre-existing condition. Whether Plaintiff attempted to file a claim at some point earlier in time has no bearing on that issue.

### D.   *Worker's Compensation*

Plaintiff suggests in briefing that Defendant abused its discretion because it denied long-term disability benefits in spite of Plaintiff's receipt of worker's compensation benefits. The administrative record does not contain any documentation of the basis of the Worker's Compensation Commission's decision. Although it is clear that Plaintiff received such benefits, Defendant's claim examiner specifically noted that Plaintiff failed to provide a worker's compensation payment history. *Id.* at 634.

The policy provides that Plaintiff must provide proof of loss. She failed to provide Defendant with a copy of the Commission's decision. Accordingly, Defendant did not abuse its discretion by failing to consider the award of worker's compensation benefits. *See Marrs v. Prudential Ins. Co. of Am.*, 444 F. App'x 75, 77 (5th Cir. 2011) (where

plaintiff failed to provide administrator with evidence of an SSA decision, administrator did not abuse discretion by failing to consider the SSA decision); *Burtch v. Hartford Life & Acc. Ins. Co.*, 314 F. App'x 750, 753 n. 2 (5th Cir. 2009) (where claimant failed to provide administrator with basis and reasoning of the SSA's decision, administrator was not obligated to justify its disagreement with the SSA's decision).

### E.  *Independent Investigation*

Plaintiff argues that Hartford abused its discretion by failing to obtain an independent medical examination. An ERISA plan administrator's obligation to obtain an independent medical examination is determined by reference to the plan documents. *Gooden*, 250 F.3d at 336 n. 9; *Meditrust Fin. Servs. Corp. v. Sterling Chems.*, 168 F.3d 211, 215 (5th Cir. 1999). If the plan does not require an independent medical examination, the administrator is not obligated to obtain one, and it may restrict its review to medical records. *Meditrust*, 168 F.3d at 215. Phrased differently, a plan administrator "is not under a duty to reasonably investigate a claim because it would be not only inappropriate but inefficient to require the administrator to obtain information in the claimant's control in the absence of the claimant's active cooperation." *Gooden*, 250 F.3d at 333 (punctuation omitted).

While the policy allows Defendant to have Plaintiff examined as often as reasonably necessary, it does not require Defendant to do so. Accordingly, Defendant's failure to obtain an independent medical examination does not constitute an abuse of discretion.

### F.     *Plan Materials*

Finally, Plaintiff suggests in briefing that she was not provided a copy of the policy. Her counsel received a copy of the policy [12-2] on November 24, 2010. She did not file the subject claim until the summer of 2011. Therefore, she had knowledge of the policy's terms and conditions at all pertinent times during the claim process.

### III. CONCLUSION

For the reasons stated above, the Court **grants** Defendant's Motion for Summary Judgment [62]. Plaintiff's claims are **dismissed with prejudice**. The Court will enter a separate order in accordance with Rule 58.

SO ORDERED AND ADJUDGED this 3rd day of August, 2012.

>                    *s/ Keith Starrett*
>           UNITED STATES DISTRICT JUDGE